UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


MICHAEL DESHAY PEOPLES, JR.    ]
    Petitioner,                ]
                               ]
v.                             ]    No. 3:12-1179
                               ]    Judge Trauger
CHERRY LINDAMOOD, WARDEN       ]
    Respondent.                ]


**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Whiteville Correctional Facility in Whiteville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against Cherry Lindamood, Warden of the prison, seeking a writ of habeas corpus.

**I. Background**

On July 22, 2008, a jury in Davidson County found the petitioner guilty of first degree felony murder, especially aggravated robbery, aggravated robbery and aggravated kidnapping. Docket Entry No.15-4 at pg.65. For these crimes, he received concurrent sentences of life imprisonment (felony murder), eighteen (18) years (especially aggravated robbery), ten years (aggravated robbery), and ten years (aggravated kidnapping). Docket Entry No.15-1 at pgs.31-34.

On direct appeal, the Tennessee Court of Criminal Appeals

1

affirmed the convictions and sentences. Docket Entry No.15-9. The Tennessee Supreme Court would later deny the petitioner's application for further review. Docket Entry No.15-11.

The petitioner next filed a *pro se* petition for state post-conviction relief in the Criminal Court of Davidson County. Docket Entry No.15-12 at pgs.4-11. That petition was summarily denied by the trial court for failure to include factual allegations in support of petitioner's claims. *Id.* at pgs.12-13. The Tennessee Court of Criminal Appeals later affirmed the denial of post-conviction relief. Docket Entry No.15-16.

## II. Procedural History

On November 8, 2012, the petitioner initiated the instant action with the *pro se* filing of a petition for writ of habeas corpus (Docket Entry No.1) in the District Court for the Western District of Tennessee. By an order (Docket Entry No.4) entered five days later, the petition was transferred to this judicial district for disposition.

The petition contains three claims for relief. These claims include:

    1)    the evidence was insufficient to support the convictions;

    2)    the trial judge committed error when he allowed the admission of evidence referencing a prior bad act, i.e., the alleged robbery of Raoul Buganda; and

    3)    error occurred when the petitioner was not given a reasonable opportunity to amend his

2

>post-conviction petition in order to avoid
>its summary denial.

Upon its receipt, the Court conducted a review of the petition and determined that it contained at least one colorable claim for relief. Accordingly, an order (Docket Entry No.6) was entered directing the respondent to file an answer, plead or otherwise respond to the petition.

Presently before the Court is the respondent's Answer (Docket Entry No.14), to which the petitioner has offered no reply. Having carefully considered the petition, respondent's Answer, and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* <u>Smith v. United States of America</u>, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Post-Conviction Error**

The petitioner has alleged that an error occurred when he was not accorded a reasonable opportunity to amend his post-conviction petition in order to avoid its summary denial (Claim No.3).

In order to sustain a claim for federal habeas corpus relief, the petitioner must set forth factual allegations suggesting that the fact or duration of his incarceration is in some way

3

constitutionally defective. 28 U.S.C. § 2254(a); <u>Koontz v. Glossa</u>, 731 F.2d 365, 368 (6th Cir. 1984). A state is not constitutionally required to provide convicted felons with a means by which they can collaterally attack their convictions. <u>Pennsylvania v. Finley</u>, 107 S.Ct. 1990,1994 (1987). Thus, a federal writ of habeas corpus will not issue when the petitioner is merely challenging errors or deficiencies related to a state post-conviction proceeding. <u>Kirby v. Dutton</u>, 794 F.2d 245 (6th Cir. 1986).

Here, the petitioner is asserting a claim which, in no way, directly brings into question the legality of his convictions or confinement. Consequently, this claim does not provide a viable basis for federal habeas corpus relief.

**B.) Procedurally Defaulted Claim**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1).

While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his

federal claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d 327,331 (6th Cir.1999). The petitioner must offer the state courts both the factual and legal bases for his claims. Hicks v. Straub, 377 F.3d 538,552 (6th Cir.2004). In other words, the petitioner must present "the same claim under the same theory" to the state courts. *Id.* It is not enough that all the facts necessary to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4,6 (1982).

Once petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[1]

Federal habeas corpus relief, as noted above, is only available to cure "a violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim that is based upon a perceived error or misapplication of state law will not normally be recognized as an actionable claim for federal habeas corpus relief. Lewis v.Jeffers, 497 U.S. 764, 780 (1990).

In challenging the admission of evidence regarding a prior bad

---

[1] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

5

act (Claim No.2), the petitioner argues that this evidence was admitted in violation of state rules of evidence. *See* Docket Entry No.1 at pg.7. This claim was offered to the state courts solely as a perceived error of state rather than federal law. Docket Entry No.15-7 at pgs.19-20. As a consequence, this issue has never been fully exhausted in the state courts as a federal claim.

Unfortunately, at this late date, the petitioner is no longer able to raise this issue in the state courts as a federal claim. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to that claim. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of the claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice arising from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The petitioner's pleadings offer nothing to suggest cause for the failure to exhaust this evidentiary claim as a question of federal law in the state courts in a timely manner. Nor has there been a showing of prejudice arising from the alleged violation. Consequently, petitioner's evidentiary claim (Claim No.2) will not support an award of federal habeas corpus relief. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the federal claim was not raised in the state appellate courts for review).[2]

---

[2] In any event, the state courts found that the admission of evidence referring to a prior bad act had been waived in the absence of a contemporaneous objection. Docket Entry No.15-9 at pg.11.

**C.) Fully Exhausted Claim**

The petitioner's remaining claim, i.e., the insufficiency of the evidence (Claim No.1), was considered by the state courts on the merits and has been fully exhausted.

The availability of federal habeas corpus relief is limited with respect to claims that have been previously adjudicated on the merits in state court. Harrington v. Richter, 131 S.Ct. 770,780 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an

examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 529 U.S. 389.

The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.,* 99 S.Ct. at 2789. The only question this Court need answer "is whether that finding was so unsupportable as to fall below the threshold of bare rationality." Cavazos v. Smith, 132 S.Ct. 2,4 (2011).

Petitioner's sufficiency of the evidence claim was presented to the state courts during the direct appeal of his convictions. Docket Entry No.15-7. A jury found the petitioner guilty of first degree felony murder, especially aggravated robbery, aggravated robbery and aggravated kidnapping. The state courts determined that there was sufficient evidence to support these convictions. This claim will provide a basis for federal habeas relief only if the Court finds that the ruling of the state courts on this issue was either contrary to or was an unreasonable application of clearly

established federal law. Williams, *supra.*

The evidence showed that Sean Wells and Abdullah Musse shared an apartment. Sean Wells admitted in his testimony that he sold small amounts of illegal drugs. Docket Entry No.15-2 at pg.9. On the evening of October 12, 2005, DeAndre Winkfield was a guest at their apartment.

Winkfield briefly left the apartment to sell some marijuana. *Id.* at pg.14. When Winkfield returned, he entered the apartment with his hands up, followed by three men with weapons. *Id.* at pg.15. Each intruder wore something to mask their faces. *Id.* at pgs.16-17.

The intruders searched Wells, Musse and Winkfield for drugs, weapons and money. When Musse began to resist, the intruders pistol whipped him. *Id.* at pg.18. The occupants of the apartment were forced to their knees facing a wall. Wells testified that "they each had one of us." *Id.* at pg.19. The intruders were told that there were no more weapons, drugs or money in the apartment. One of the intruders began to search the apartment and found a weapon brought by Winkfield. *Id.* at pgs.19-20.

Upon this discovery, the intruders threatened to shoot Wells. *Id.* at pg.21. One of the men took Winkfield into the bathroom where it was believed he would be killed. However, there was a knock at the door. When the door was opened, occupants and intruders alike began to run out of the apartment. During the confusion, Musse

"went after the last one he could get." A struggle ensued and Musse was shot. *Id.* at pg.26. The three intruders fled the scene. Musse would later die from his wounds.

Wells described the intruders as black men in their early 20s. *Id.* at pg.16. He testified that they worked well together and that none of them appeared to be reluctant about the robbery. *Id.* at pgs.21-22. A neighbor heard at least two shots. She saw a black man running in the parking lot shouting "Come on Pee Wee, let's go". *Id.* at pg.42. A police officer testified that the petitioner, who is an African-American in his early 20s, was sometimes known by the nickname "Pee Wee". *Id.* at pg.89.

Nine weeks later, police arrested the petitioner. *Id.* at pg.66. At the time, he was seen running from a red Pontiac automobile that matched the description of a car in the parking lot on the night of the robbery. A search of the red Pontiac revealed an assault rifle that looked like the Winkfield weapon taken during the robbery. *Id.* at pg.72.

The petitioner took the witness stand and acknowledged that he was one of the intruders on the night of the robbery. He admitted to entering the apartment with a .22 caliber pistol, Docket Entry No.15-3 at pg.37, and to fleeing the scene with the other two intruders. *Id.* at pg.39. The petitioner admitted to having a weapon in the red Pontiac when the police came for him and that he attempted to evade arrest. *Id.* at pg.40. In an earlier statement to

the police, the petitioner acknowledged receiving a share of the money taken in the robbery. *Id.* at pg.62.

The petitioner denied being the man who shot Musse. He stated that he thought the meeting was supposed to simply be a drug buy and that he had no intention of robbing anybody. The petitioner insisted that he never pulled the .22 caliber pistol from his pocket during the robbery. He testified that his companions escaped with three bags filled with money, clothes, cell phones and video games but recanted his earlier statement and claimed that he received none of the loot from the robbery.

Tennessee law defines first degree felony murder as the killing of another committed in the perpetration of or attempt to perpetrate any ... robbery. Tenn. Code Ann. § 39-13-202(a)(2).

The evidence shows that Musse was shot and killed during a robbery. Wells testified that each of the intruders was armed and that each attempted to hide their identity. He further testified that none of the intruders showed any reluctance to participate in the robbery. The petitioner acknowledged being an uninvited guest in the apartment at the time of the robbery and that he was armed with a pistol. The jury heard the petitioner, in a statement to the police, admit to getting a share of the loot taken during the robbery. From this evidence, the state courts correctly held that any reasonable juror could have found the petitioner guilty of first degree felony murder.

Especially aggravated robbery is the intentional or knowing theft of property from another accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403(a). As noted above, the intruders robbed Musse and his companions at gunpoint. Musse was pistol whipped by the intruders. He was shot and seriously wounded during the robbery and would later die from his wounds. Clearly, there was sufficient evidence to find the petitioner guilty of this crime.

The petitioner was also charged with aggravated robbery. This crime is defined as a robbery accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1). Wells testified that the armed intruders took cocaine, marijuana, money and a cell phone from him during the robbery. This testimony was sufficient to establish that the petitioner, who admitted to being one of the intruders, was guilty of aggravated robbery.

Finally, the petitioner was convicted of aggravated kidnapping. This offense is the false imprisonment of another that is committed while the perpetrator is in possession of a deadly weapon or threatens the use of a deadly weapon. Tenn. Code Ann. § 39-13-304(a)(5).

During the robbery, the evidence showed that Winkfield was separated from Wells and Musse and taken to a bathroom where he was held at gunpoint. From this evidence, any rational trier of fact could reasonably infer that the petitioner and his accomplices had

kidnapped Winkfield by threatening the use of a deadly weapon. Therefore, it does not appear that the state courts violated clearly established federal law by holding that the evidence was sufficient to support petitioner's conviction for aggravated kidnapping.

## IV. CONCLUSION

The petitioner's post-conviction issue (Claim No.3) does not state a colorable claim for federal habeas corpus relief. His claim regarding the admission of evidence referencing a prior bad act (Claim No.2) was never exhausted in the state courts as a question of federal constitutional law. Because he is no longer able to raise this claim in the state courts as a federal issue, he has procedurally defaulted on his state court remedies for the claim. The procedural default of the state remedies for this claim is unexcused. For that reason, this claim will not support an award of habeas corpus relief.

The state courts determined that the petitioner's fully exhausted claim, i.e., the insufficiency of the evidence (Claim No.1), lacked merit. The record supports this finding. The petitioner has failed to demonstrate in what way the legal analysis of the state courts ran contrary to federal law. Accordingly, having carefully reviewed the record, it appears that the state court adjudication of petitioner's fully exhausted claim was neither contrary to nor an unreasonable application of federal law.

Consequently, this claim has no merit.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge